## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## SUPEREX DRUGS, INC. and Superex Drugs of Kentucky, Inc., Respondents.

### No. 15748.

United States Court of Appeals
Sixth Circuit.

Jan. 21, 1965.

748

Morton Namrow, N. L. R. B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Warren M. Davi-son, Attorney, N. L. R. B., Washington, D. C., on brief, for petitioner.

J. Mack Swigert, Cincinnati, Ohio, Wilbur L. Collins, Cincinnati, Ohio, on brief; George A. Leonard, Cincinnati, Ohio, of counsel, for respondents.

Before WEICK, Chief Judge, CECIL, Circuit Judge, and SMITH, District Judge.

PER CURIAM.

This cause is before the Court on petition of the National Labor Relations Board for enforcement of its order of June 26, 1963, against the respondents Superex Drugs, Inc. and Superex Drugs of Kentucky, Inc. The alleged unfair labor practices occurred in Covington, Kentucky, in a store of the respondent, Superex Drugs of Kentucky, Inc. Both respondents are Ohio corporations and subsidiaries of the Kroger Co., an Ohio corporation. The order of the Board is directed against both respondents. No question is presented by reason of this and we make no inquiry concerning it.

The respondents own and operate a chain of drug stores in the Greater Cincinnati area, including a store in Covington, Kentucky. Retail Store Employees Union, Local 1099, Retail Clerks International Association, AFL-CIO, hereinafter called the Union, conducted an organizational campaign in some of the respondents' stores, which resulted in an election on July 6, 1962. The Union lost the election. On November 7, 1962, the Board set this election aside on complaint of the Union. A new election was ordered which was held on November 30, 1962. The Union also lost this election.

During the organizational campaign one Louise Crain, employed in the Covington store as a cosmetician, was active in promoting the Union and she secured signed union cards from six to ten of the employees. She was an observer for the Union at the first election. On November 17th, a date between the time the first election was set aside and the

time set for the second election, Louise Crain and one Judith Ann Miller, a cashier, were discharged. They were allegedly discharged for violating a company rule requiring employees to fill out "employee purchase slips" on all employee purchases. On the evening of November 16th, Louise Crain purchased a magazine and a necklace and paid the full purchase price, approximately $1.50, to cashier, Judith Miller. No employee purchase slip was executed. Mr. Paul J. Ruwe, the store manager, was standing within three feet of the parties at the time the transaction was made. He admitted that he saw the sale but denied that he knew whether an employee purchase slip had been made out. The following morning Mr. Ruwe called Miller and Crain into his office and, after discussing with them the rule and policy of the company, discharged them.

A hearing was had before a trial examiner on the complaint issued as a result of the Union's charges and the respondents were found guilty of violating section 8(a) (3) of the Labor Management Relations Act.

The evidence is in conflict as to whether Crain and Miller knew that the rule regarding employee purchase slips applied to sales where no employees' discount was taken. The evidence is also conflicting as to the extent that the rule had been previously enforced. These employees were capable and efficient and had never before been disciplined. The Board found, in approving the examiner's report and recommendation, that Crain was discharged because of her Union activities and that Miller was discharged to give an appearance of legitimacy to Crain's discharge.

We have reviewed the evidence as set forth in the joint appendix and we are of the opinion that, considering the record as a whole, there is substantial evidence to support the inference drawn by the Board concerning the discharge of these two employees. If facts are open to conflicting inferences, we are not at liberty to draw an inference different from the one drawn by the Board, even though it may seem more plausible and reasonable to us. N. L. R. B. v. Nevada Consolidated Copper Corp., 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305; N. L. R. B. v. Link-Belt Co., 311 U.S. 584, 596–597, 61 S.Ct. 358, 85 L.Ed. 368; N. L. R. B. v. Wayne W. Wilson Co., 311 F.2d 1, C.A. 6; and N. L. R. B. v. Ellis & Watts Products, Inc., 297 F.2d 576, C.A. 6. See also, Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

The Board, on the recommendation of the trial examiner, also found that the respondents violated section 8(a) (1) of the Act by interfering with, restraining, and coercing its employees in the exercise of rights guaranteed in section 7 of the Act. This finding grew out of a conversation Mr. Hardesty, a former manager of the Covington store, had with employee Jayne Evelyn Pugh on the day of the first election.

The substance of this finding is summed up in one sentence of the witness: "He said that probably things wouldn't be as easy as they had been; that probably we would punch in and out on a time card for our breaks; and that was the whole—the whole of it." She also said: "That he made no threats or promises. He wasn't trying to influence us either way." This is all of the evidence there is in support of the finding of a violation of section 8(a) (1).

We cannot interpret this as any threat to impose sanctions on the employees in the event the Union was successful in the election. Management was opposed to the Union, which position it had a legal right to take. There is nothing in the above statement of Mr. Hardesty that exceeds the limits of the right of free speech.

Enforcement is decreed as to the 8(a) (3) violation and denied as to the violation of section 8(a) (1).