## NATIONAL LABOR RELATIONS BOARD, Petitioner,

### v.

### LOCAL UNION NO. 369 OF the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO, and George F. Wode, its agent, Respondents.

### No. 15767.

### United States Court of Appeals Sixth Circuit.

### Feb. 10, 1965.

Gary Green, Atty., N. L. R. B., Washington, D. C., and Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Warren M. Davison, Atty., N. L. R. B., Washington, D. C., on the brief, for petitioner.

Charles R. Isenberg, Louisville, Ky., for respondent.

Before CECIL and O'SULLIVAN, Circuit Judges, and SMITH, District Judge.

PER CURIAM.

This cause is before the Court on petition of the National Labor Relations Board for enforcement of its order of August 9, 1963, against the respondents, Local Union No. 369 of the International Brotherhood of Electrical Workers, AFL-CIO, and George F. Wode, its agent. The Board found that Wode,

acting on behalf of the Union, attempted to cause Charles A. Bentley, d. b. a Bentley Electric Company, to discharge employee Robert N. Moore, in violation of Section 8(a) (3) of the National Labor Relations Act and thereby violated Sections 8(b) (2) and 8(b) (1) (A) of the Act. 49 Stat. 449, 29 U.S.C. § 151 et seq.[1] The alleged unfair labor practices occurred in Louisville, Kentucky.

Bentley was a member of an association of employers, the Louisville Electrical Guild, which had a collective bargaining agreement with the respondent union. There was a provision in the agreement that the employer would notify the Union when replacement or additional employees were needed.

The following facts were found by the Board: On June 13, 1961, Bentley hired Moore without first notifying the Union that he needed an employee. Wode, the business manager and agent of the Union, learned of this employment soon after it occurred and on the following day, Jess Brown, the assistant business manager of the Union, advised Bentley that he had breached his contract by not first notifying the Union that he was in need of an employee. Wode then demanded that Bentley "get rid of" Moore because he was a "free loader" and not a member of the Union.

Bentley refused and on June 15, 1961, Wode ordered the Union men working for Bentley to walk off of the job. Wode told Bentley's employees at a meeting held at the Union hall, that Bentley was in violation of the contract for hiring Moore "off the street, a non-Union man."

On June 19, 1961, Wode called a meeting of the employer-union Joint Conference Committee to consider the complaint that Bentley had breached the Guild contract. This Committee, created for the purpose of hearing grievances of either the Union or employers, found that Bentley had violated the agreement. No remedy was recommended.

For the next few days, Wode checked with Bentley several times to see that Moore was no longer in his employ. Each time Bentley admitted Moore was still working for him but that he would soon discharge him. Finally, after about June 23, 1961, Wode stopped inquiring from Bentley about Moore.

Moore remained with Bentley without the knowledge of Wode until January 11th or 12, 1962. At this time, Wode learned that Moore was still employed by Bentley and that Bentley had failed to contribute payments to the Union's health and welfare fund on Moore's behalf. Wode renewed his demands that Moore be discharged.

On February 1, 1962, the Joint Conference Committee met again at Wode's request to discuss the situation. Moore, who was called into this meeting by Bentley, offered to join the Union and pay the initiation fee and all dues for the time that he had worked for Bentley. Wode became angered at this and ordered Moore to leave. Bentley and Moore left, and nothing was accomplished at the meeting.

On February 5, 1962, Wode threatened to call another strike unless Moore was

---

1. Title 29 U.S.C. § 158: "Unfair labor practices"
  "(a) It shall be an unfair labor practice for an employer—
  * * * * *
  "(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: * * *
  "(b) It shall be an unfair labor practice for a labor organization or its agents—
  "(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title:
  * * *
  "(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;
  * * *."

discharged. On the following day Bentley paid into the health and welfare fund of the Union the amount accrued on Moore's behalf during his employment by Bentley. Again on April 5, 1962, Wode demanded that Bentley "get rid of" Moore. At various times throughout the meetings and transactions here involved, Wode referred to Moore as a "free loader" and a non-union member. There is testimony that he said he wanted Moore replaced with a union man.

On April 9, 1962, Moore filed charges against Wode and the Union. The Trial Examiner found that Wode's attempts to have Moore discharged were based solely upon Bentley's failure to give the Union prior notice of a job vacancy and his failure to make health and welfare payments on Moore's behalf. He found, therefore, that Wode's demands were justified.

The Board disagreed. It found that Wode's actions concerning Bentley's failure to give the Union notice of his need of an employee prior to hiring Moore and his failure to make payments to the health and welfare fund on behalf of Moore were but a pretext. It found that the real reason Wode demanded Moore's discharge was because he was not a member of the Union. Based on these findings, the Board found the Union and Wode guilty of unfair labor practices as above stated.

■■ We have reviewed the evidence as set forth in the joint appendix and we are of the opinion that, considering the record as a whole, there is substantial evidence to support the inference drawn by the Board that the real reason for demanding the discharge of Moore was because he was not a member of the Union. If facts are open to conflicting inferences, we are not at liberty to draw an inference different from the one drawn by the Board, even though it may seem more plausible and reasonable to us. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; N. L. R. B. v. Walton Mfg. Co., 369 U.S. 404, 405, 82 S.Ct. 853, 7 L.Ed.2d 829; N. L. R. B. v. Nevada Consolidated Copper Corp., 316 U.S. 105, 106–107, 62 S.Ct. 960, 86 L.Ed. 1305; N. L. R. B. v. Link-Belt Co., 311 U.S. 584, 596–597, 61 S.Ct. 358, 85 L. Ed. 368; N. L. R. B. v. Superex Drugs, Inc., 341 F.2d 747, C.A. 6; N. L. R. B. v. Power Equipment Co., 313 F.2d 438, C.A. 6; N. L. R. B. v. Wayne W. Wilson Co., 311 F.2d 1, C.A. 6; N. L. R. B. v. Bendix Corporation (Research Laboratories Division), 299 F.2d 308, C.A. 6; N. L. R. B. v. Ellis and Watts Products, Inc., 297 F.2d 576, C.A. 6.

The order of the Board is consistent with its finding of unfair labor practices and it is entitled to a decree of enforcement.