**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CHALLENGE–COOK BROTHERS OF OHIO, INC., Respondent.**

**No. 16842.**

United States Court of Appeals
Sixth Circuit.

March 2, 1967.

George B. Driesen, Atty., N.L.R.B., Washington, D. C., for petitioner, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Edith Nash, Atty., N.L.R.B., Washington, D. C., on brief.

Erwin Lerten, Beverly Hills, Cal., for respondent, Potruch & Lerten, Beverly Hills, Cal., on brief.

Before WEICK, Chief Judge, EDWARDS, Circuit Judge, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This cause is before the Court upon the petition of the National Labor Rela-

tions Board for enforcement of its order, issued June 18, 1965, against Challenge-Cook Brothers of Ohio, Inc., the respondent herein. This Court has jurisdiction of the proceeding, the alleged unfair labor practices having occurred in Bryan, Ohio, within this judicial circuit. Section 160(e), Title 29, U.S.C.

The first issue concerns the Board's finding that the respondent committed an unfair labor practice, in violation of Sections 158(a) (3) and (1), Title 29, U.S.C.,[1] by discriminatorily discharging employee Jimmie Weldon because of union activities. The question before us is whether there is substantial evidence to support this finding. Section 160(e), Title 29, U.S.C. The Board ordered the respondent to offer Weldon full and immediate reinstatement to his former position, with back pay.

Challenge-Cook Brothers of Ohio, Inc., is a subsidiary of Challenge-Cook Brothers, Inc., a California corporation. At its plant in Bryan, Ohio, it manufactures and distributes cement mixers. There can be little doubt that the respondent strongly opposed union organizational efforts at its plants. Hall, president of the respondent corporation, stated to the employees in December, 1963, during a Teamster organizational campaign, that the respondent "is opposed to (employees) joining a labor union." He further told the employees that a month after a union won an election in California, certain production operations of that plant were transferred to Bryan, Ohio.

Respondent hired Jimmie Weldon in January, 1962, and he worked in the burning department. On the date of his discharge, August 24, 1964, Jimmie Weldon was receiving the highest wage rate paid to a non-supervisory employee. While on a fishing trip in March or April, 1964, Weldon observed a sign which he had his wife copy in longhand. He attached the sign, which he thought funny, to a picture of a nude female, and posted it at his machine. The sign read:

"To Whom it May Concern

Since I have worked at Challenge I have been shot at, Robbed, beat up, knocked up, knocked down, Fired, Hired, counted, discounted, credited, discredited, lied to, lied for, liked, disliked, fought for, fought against, organize(d), disorganize(d), baffled, burned, cut, jabbed, pled for, pleaded with, warned about, talked about, talked to, blamed for, and cussed. The only reason I continue to work here is to see what the Hell They'll do to me next

Jim Weldon"

It was not unusual for employees to post humorous notices at their work stations.

Although the respondent denied that any of its supervisory personnel had knowledge of the poster before August 20, 1964, some six months after it was posted, the hearing examiner found to the contrary. The uncontradicted testimony showed that LaVerne Parsons, the respondent's general foreman, passed within several feet of the sign once or twice daily in the course of his inspection of the plant. Parsons stopped by Weldon's machine to talk with him ten to fifteen times during this period. Dorrance Moore became foreman of the burning department, in which Weldon was em-

---

1. "(a) It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

\* \* \* \* \*

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: \* \* \* "

"Section 157. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a) (3) of this title."

ployed, on August 24th. Prior to that date he was foreman of another department in the plant. Moore stopped at Weldon's machine to talk with him several times prior to August 24th. Parsons denied seeing the sign until August 20th and Moore until August 24th. Two of Weldon's co-workers who worked about twenty feet from him noticed the sign as soon as it was posted.

On Friday, August 14, 1964, a meeting of International Union of District 50, United Mine Workers of America, hereafter referred to as the union, was held at the home of Weldon, to discuss organizing the employees at the respondent's plant. On Monday, August 17th, Weldon and another employee openly distributed union literature in the plant. On August 19th, Weldon was elected secretary-treasurer of the union organizational committee. Thereafter, Weldon, at all times wore a union button pinned to his shirt. The button which was about the size of a half dollar, proclaimed, in letters from one quarter to one half inch long, "I am a Union Member. District 50 UMWA. Are you?" On two occasions when he was wearing his button, Foreman Parsons spoke with him. On one occasion, Parsons wore a button which stated, "If I don't catch hell from my boss, my day ain't complete," and remarked to Weldon and another employee that they were not the only ones who could wear buttons. Parsons denied ever making this remark, and ever noticing Weldon wearing a button.

Parsons testified that he first noticed the sign on August 20th, at which time he asked Weldon if that was the way the company was actually treating him. Weldon, Parsons stated, merely smiled and shrugged his shoulders. Parsons then stated that when the sign was not taken down during the next two succeeding days, he called its attention to Joseph R. Staudt, the respondent's personnel manager. After copying the sign, Staudt brought the matter before Kenneth R. Harman, Plant Manager, who

said that the matter would be discussed the following Monday, August 24, 1964. Though the account of the meeting on August 24th, between Parsons, Moore, Staudt and Harman, varies greatly according to who is giving the account, all four testified that the matter was of so serious a nature, in that it held the company up to mockery and ridicule, that it warranted the immediate discharge of Weldon. Weldon was called into the office of Staudt on August 24, 1964, at about 1:30 p. m., and without receiving a warning, or being asked to remove the sign, was summarily discharged. All four company officials who participated in the discharge deny having had any knowledge that Weldon was active in the union or even a member of it.

On this state of the record the Board found that Jimmie Weldon was discriminatorily discharged by the respondent because of his union activities. The Board found that Parsons and Moore saw the sign several times before the union began its organizational campaign, and expressed no opposition to it. The Board further found that Parsons had knowledge of Weldon's union affiliation and activity prior to his discharge. Finding that the respondent had knowledge of the sign before the union's activities began at the plant, and that the respondent had knowledge of Weldon's union affiliation, the Board concluded that Weldon was discharged for his union activity. In reaching this conclusion the Board considered the respondent's policy to issue warnings or reprimands for less serious offenses and breaches of company rules.

The only restriction that the National Labor Relations Act places upon an employer's right to discharge employees, is that it not be because of union activity or affiliation. National Labor Relations Board v. Waterman S.S. Corp., 309 U.S. 206, 60 S.Ct. 493, 84 L.Ed. 704, rehearing den., 309 U.S. 696, 60 S.Ct. 611, 84 L.Ed. 1036; National Labor Relations Board v. Fansteel Metallurgical Corp., 306 U.S. 240, 59 S.Ct. 490, 83 L.

Ed. 627; N. L. R. B. v. Adkins Transfer Co., 226 F.2d 324 (C.A. 6); N. L. R. B. v. Superior Co., 199 F.2d 39 (C.A. 6); N. L. R. B. v. Tennessee Coach Co., 191 F.2d 546 (C.A. 6). Even if there might be a justifiable reason for the discharge of an employee, if the real motive for the firing is discrimination against him because of his union activities or affiliation, there is a violation of the Act. Wonder State Mfg. Co. v. N. L. R. B., 331 F.2d 737 (C.A. 6). The true reason for the discharge is the controlling and ultimate fact. N. L. R. B. v. Adkins Transfer Co., supra.

■ The respondent argues that because it did not discharge other employees who were known to be union members, Weldon's discharge cannot be said to have been motivated by union animus. However, the mere fact that all union members or supporters are not discharged, does not disprove the fact that an employee's discharge is based upon an unlawful discriminatory motive. Nachman Corporation v. N. L. R. B., 337 F.2d 421 (C.A. 7).

■ Our scope of review is limited. Section 160(e), Title 29, U.S.C., provides in part:

"The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive."

See Universal Camera Corporation v. National Labor Relations Board, 340 U. S. 474, 71 S.Ct. 456, 95 L.Ed. 456; National Labor Relations Board v. Denver Bldg. & Const. Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284. The credibility of witnesses is a matter for the determination of the Hearing Examiner and the Board. Keener Rubber, Inc. v. N. L. R. B., 326 F.2d 968 (C.A. 6), cert. den. 377 U.S. 934, 84 S.Ct. 1337, 12 L.Ed. 2d 297; N. L. R. B. v. Herman Bros. Pet Supply, Inc., 325 F.2d 68 (C.A. 6); N. L. R. B. v. Bendix Corporation (Research Lab. Div.), 299 F.2d 308 (C.A. 6), cert.

den. 371 U.S. 827, 83 S.Ct. 47, 9 L.Ed.2d 65. If facts are open to conflicting inferences, we are not at liberty to draw an inference different from the one drawn by the Board. even though it may seem more plausible and reasonable to us. Universal Camera Corp. v. N. L. R. B., supra; N. L. R. B. v. Walton Mfg. Co., 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829; N. L. R. B. v. Nevada Consolidated Copper Corp., 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305; N. L. R. B. v. Link-Belt Co., 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368; N. L. R. B. v. Superex Drugs, Inc., 341 F.2d 747 (C.A. 6); N. L. R. B. v. Local Union No. 369 of Int. Bro. of Elec. Wkrs., 341 F.2d 470 (C.A. 6); N. L. R. B. v. Power Equipment Co., 313 F.2d 438 (C.A. 6); N. L. R. B. v. Wayne W. Wilson Co., 311 F.2d 1 (C.A. 6); N. L. R. B. v. Bendix Corporation (Research Lab. Div.), supra; N. L. R. B. v. Ellis and Watts Products, Inc., 297 F.2d 576 (C.A. 6).

■ We conclude that the findings of the Board on the issue of the discriminatory discharge of Weldon are supported by substantial evidence, considering the record as a whole, and that the inferences drawn from the facts, are reasonable and proper.

The second issue concerns the respondent's alleged unlawful removal on August 25th and October 21st, 28th and 29th, 1964, of signs posted on its bulletin boards giving notice of union meetings. The bulletin boards on which these signs were posted were commonly used by respondent's employees for personal notices, and announcements of meetings of social and religious organizations. Staudt, the personnel manager, testified that the respondent had not announced any policy with respect to the use of the bulletin boards by the employees and that no employees had ever requested his permission to so use the boards. He said that the respondent's policy was to allow postings concerning matters that are "not controversial in nature," and that he did not know of any other notices, besides the one in question, ever having been re-

moved by the management. Foreman Moore testified that although the general practice was to ask permission before posting, there was no "hard set rule on the thing." No permission was sought and none granted in the instances involved herein.

■ From these facts the Board found that the removal of the union meeting notices, being motivated by union animus, constituted violations of section 158(a) (1), Title 29, U.S.C. The Board ordered the respondent to cease and desist from removing from its bulletin boards notices concerning labor organizations which have been posted by an employee or employees. Substantial evidence existed in the record to support a finding that the removal of the signs was motivated by hostility toward union activity rather than failure to get permission.

■ Respondent attempts to bring its action within the ambit of protected activity by relying on cases dealing with the right of a union to have access to an employer's plant. However, this is not a case where a union representative or official is attempting to solicit employees on company property. What is involved here is the right of employees to inform other employees of union activity and to solicit their interest. The distinction between rules of law applicable to employees and non-employees "is one of substance." National Labor Relations Board v. Babcock & Wilcox Co., 351 U.S. 105, 113, 76 S.Ct. 679, 100 L.Ed. 975. "No restriction may be placed on the employees' right to discuss self-organization among themselves, unless the employer can demonstrate that a restriction is necessary to maintain production or discipline." National Labor Relations Board v. Babcock & Wilcox, Co., supra, at p. 113, 76 S.Ct. at p. 685. See also, Republic Aviation Corporation v. National Labor Relations Board, 324 U.S. 793, 65 S.Ct. 982, 89 L. Ed. 1372, rehearing den. N. L. R. B. v.

Le Tourneau Co., 325 U.S. 894, 65 S.Ct. 1401, 89 L.Ed. 2005; National Labor Relations Board v. Monarch Tool Co., 210 F.2d 183 (C.A. 6), cert. den. 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1109. These cases stand for the proposition that an employer cannot interfere with his employees' right to distribute union literature and solicit union interest among themselves on company property, without having a valid reason relating to the management, production or discipline of the plant. The posting of a notice on a company bulletin board which has been used for other employee notices without the strict necessity of obtaining prior permission, is identical to the rights protected in these other cases. The respondent has not given any reason for removing the notices other than saying that prior permission was not obtained. But the evidence indicates that such prior approval was not required in all cases, and the personnel manager testified that the respondent had no policy regarding the use of the bulletin boards. We hold that in these circumstances the Board was justified in finding that such discrimination against union meeting notices, motivated by an animus against the union, constituted a violation of Section 158(a) (1), Title 29, U.S.C.

■ Respondent claims that the Board's order is too broad in that it orders the respondent to "1. Cease and desist from: * * * (c). In any other manner interfering with, restraining or coercing employees in the exercise of the rights guaranteed in Section 7 of the Act." An order of the Board must have some relation to the factual situation and unfair labor practice involved. "To justify an order restraining other violations it must appear that they bear some resemblance to that which the employer has committed or that danger of their commission in the future is to be anticipated from the course of his conduct in the past." National Labor Relations Board v. Express Publishing Co., 312 U.S. 426, 437, 61 S.Ct. 693, 85 L.Ed. 930. To justify a broad order preventing vio-

lations of a general section of the Act, there must be evidence in the record to demonstrate that the employer has demonstrated a tendency or a proclivity to engage in such unlawful activity. N. L. R. B. v. Elliott-Williams Co., 345 F.2d 460 (C.A. 7); N. L. R. B. v. Lindsay Newspapers, Inc., 315 F.2d 709 (C.A. 5); N. L. R. B. v. Standard Metal Fabricating Co., 297 F.2d 365 (C.A. 8). The mere fact that an employer has violated one provision of the Act, does not justify an order enjoining violations of the Act generally. National Labor Relations Board v. Express Publishing Co., supra; Communications Workers of America, etc. v. N. L. R. B., 362 U.S. 479, 80 S.Ct. 838, 4 L.Ed.2d 896; Brewers and Maltsters Local Union No. 6 v. N. L. R. B., 301 F.2d 216 (C.A. 8).

There were two basic issues in this case as defined by the Trial Examiner:

"(1) whether the Respondent invalidly discharged James Weldon on August 24, 1964; and (2) whether the Respondent, which permits employees to post personal notices of various types on the plant's bulletin boards, violated Section 8(a) (1) during August and thereafter by removing from the bulletin boards notices of union meetings which employees had posted."

The Examiner resolved both of these issues against the Respondent and the Board sustained him. Likewise, we have sustained the Board's order directed to the remedy of these two specific violations. There were no other alleged violations before the Board.

Paragraph 1(c) of the Board's order does not have the requisite relationship to the factual situation and other unfair labor practices involved, and the record fails to demonstrate that the respondent has a proclivity to commit future unfair labor practices. The order of the Board is modified by striking therefrom paragraph 1(c).

With such modification the Board's order will be enforced.