SEATTLE–FIRST NATIONAL BANK, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 79–7387.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 11, 1980.

Decided Nov. 25, 1980.

Parry Grover, Anchorage, Alaska, Mark A. Hutcheson, Seattle, Wash., argued for petitioner; Davis, Wright, Todd, Riese & Jones, Anchorage, Alaska, on brief.

Marjorie Gofreed, Washington, D.C., for respondent.

Before SNEED and FLETCHER, Circuit Judges, and JAMESON *, District Judge.

* Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

SNEED, Circuit Judge:

The issue in this case is whether a union may station picketers in a foyer in front of the entrance to a restaurant located on the 46th floor of an office building. We conclude, as did the National Labor Relations Board, that the union should be permitted to picket on the 46th floor.[1] But we also conclude that the Board's order did not adequately protect the petitioner's property rights, and we therefore decline to enforce the Board's present order and remand the case to the Board to revise its order.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Seattle–First National Bank owns a 50–story office building in Seattle. It occupies about one–third of the building, the remainder of which is leased, primarily to professional, corporate, and commercial tenants. The Mirabeau Restaurant leases space on the 46th floor of the building. A stock brokerage firm also leases space on the 46th floor, and persons going to the 47th floor of the building must change elevators on the 46th floor. On July 14, 1978, after the expiration of a contract and a discontinuance of negotiations between the restaurant and the Hotel, Motel, Restaurant Employees and Bartenders Union, Local 8, AFL–CIO, the union struck in support of its contract demands. Picketers patrolled the entrances to the building, carrying placards, distributing leaflets, and talking to persons willing to listen. The union also assigned one or two persons to the foyer of the 46th floor of the building. These persons did not carry placards, but sometimes held leaflets in front of them like placards, in effect forcing restaurant customers and nonstriking employees to cross a picket line. They distributed leaflets and talked to potential customers of the restaurant. Until August 25, 1978, some of the persons stationed on the 46th floor were employees of the restaurant. Since that date none of the persons stationed there by the union have been restaurant employees.

■ The petitioner,[2] which controls the 46th floor foyer, demanded that the picketers stationed on the 46th floor leave on July 14, 1978, the first day of the strike. The petitioner threatened to have them arrested for trespassing. When these persons refused to leave, the petitioner sought an injunction in state court barring them from the 46th floor foyer. The state court stayed its proceedings, finding that it was preempted, after the union filed a charge with the National Labor Relations Board.[3] The com-

---

1. The Board's decision is reported at *Seattle–First National Bank*, 243 N.L.R.B. No. 145 (August 1, 1979).

2. The petitioner is an employer under the National Labor Relations Act. Although Seattle–First National Bank is not the employer of the striking restaurant workers, under section 2(3), 29 U.S.C. § 152(3) (1976), the term "employee" is not "limited to the employees of a particular employer...." In *Hudgens v. NLRB*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976), the owner of a shopping center was considered to be an employer for purposes of section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1) (1976), with respect to picketers employed by a company that operated a shoe store in the shopping center. 424 U.S. at 510 n.3, 96 S.Ct. at 1032 n.3. Section 8(a)(1) makes it an unfair labor practice for an employer to restrain employees' exercise of their right under ·section 7, 29 U.S.C. § 157 (1976), to engage in concerted activities. Therefore, the petitioner is an employer under section 8(a)(1) with respect to the picketers on the 46th floor of its office building,

and may be found to have restrained their section 7 rights.

3. In *Sears, Roebuck & Co. v. Carpenters*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), the Court found that a state court was not preempted from considering a trespassing claim where union picketers had not filed an unfair labor practice charge with the Board. The Court avoided holding "that resort to the Board will oust a state court's jurisdiction and is divided on this question." *Id.* at 233, 98 S.Ct. at 1776 (Brennan, J., dissenting) (footnote omitted). Justice Blackmun, concurring, argued that the state court should be preempted if the union files a charge. *Id.* at 209, 98 S.Ct. at 1763. But Justice Powell, concurring, disagreed that the filing of an unfair labor practice charge would preempt a state court. *Id.* at 214, 98 S.Ct. at 1766. While the petitioner complains that the state court might have ruled on its trespassing claim within a few days, while the Board took nearly a year to reach a decision, and clearly favors Justice Powell's ap-

plaint alleged that the petitioner committed an unfair labor practice under § 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) (1976),[4] by threatening to have the picketers in the 46th floor foyer arrested.

The Board's regional counsel filed a charge against petitioner, the parties agreed on stipulated facts, and they waived a hearing before an administrative law judge. A three–member panel of the Board considered the case. It concluded that the petitioner had committed an unfair labor practice. 243 N.L.R.B. No. 145, 7 (August 1, 1979). The panel ordered the petitioner to cease interference with the union's protected economic strike activities and to post a notice in the 46th floor foyer stating that it will not interfere with those activities.[5] The petitioner filed for review of the panel's order and the Board filed for enforcement of the order. This court has jurisdiction under 29 U.S.C. § 160(e) and (f) (1976).

## II

### HUDGENS v. NLRB

The bedrock on which our decision in this case rests is *Hudgens v. NLRB*, 424 U.S.

507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976). There striking warehouse employees of a shoe company picketed in front of one of the employer's retail stores. The store was located in a shopping center mall that housed sixty retail stores and was surrounded by a large parking lot. Four picketers carrying placards patrolled the area in the interior of the shopping center mall adjacent to the entrance to the shoe store. The owner of the shopping center threatened to have the picketers arrested for trespassing if they did not leave, so the picketers left and subsequently filed unfair labor practice charges.

The Court in *Hudgens* made clear that *Lloyd Corp. v. Tanner*, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972), had overruled *Food Employees v. Logan Valley Plaza*, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968). 424 U.S. at 518, 96 S.Ct. at 1035. It follows that the proper resolution of this case depends on an analysis of the National Labor Relations Act, not the application of first amendment authorities. Section 7 of the Act[6] guarantees employees the right to engage in concerted activities in support of collective bargaining, including

---

proach, we do not understand that the petitioner is asking this court to review the state court's determination that it was preempted. Accordingly, we do not express an opinion on this issue.

**4.** Section 8 states:

"(a) It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title...."

Section 7, 29 U.S.C. § 157 (1976), states: "Employees shall have the right of self–organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title."

**5.** The order, in part, stated that the petitioner shall cease and desist from:

"(a) Threatening to cause the arrest of individuals engaged in the protected, economic strike activity in the 46th floor foyer of the Seattle–First National Bank Building.

"(b) In any like or related manner interfering with, restraining, or coercing employees in the exercise of rights guaranteed in Section 7 of the Act."

The notice read:

"Posted by Order of the National Labor Relations Board An Agency of the United States Government

"WE WILL NOT threaten to cause the arrest of members of Hotel, Motel, Restaurant Employees and Bartenders Union Local 8, AFL–CIO, for distributing handbills and talking to customers in the foyer adjoining the Mirabeau Restaurant on the 46th floor of the Seattle–First National Bank Building.

"WE WILL NOT in any like or related manner interfere with, restrain, or coerce employees in the exercise of the rights guaranteed them in Section 7 of the National Labor Relations Act, as amended."

SEATTLE–FIRST NATIONAL BANK
(Employer)

**6.** *See* note 4, *supra.*

striking and picketing. *See, e. g., United Steelworkers v. NLRB,* 376 U.S. 492, 499, 84 S.Ct. 899, 904, 11 L.Ed.2d 863 (1964). Here, as in *Hudgens,* the section 7 rights of employees conflict with the private property rights of a building owner. The standard to be used in adjusting this conflict appears in *NLRB v. Babcock & Wilcox Co.,* 351 U.S. 105, 112, 76 S.Ct. 679, 684, 100 L.Ed. 975 (1956). There it was held that conflicts between section 7 rights and private property rights must be resolved "with as little destruction of one as is consistent with the maintenance of the other." *Id. Hudgens* twice quoted this passage with approval. 424 U.S. at 521, 522, 96 S.Ct. at 1037, 1038. It was also quoted in *Central Hardware Co. v. NLRB,* 407 U.S. 539, 544, 92 S.Ct. 2238, 2241, 33 L.Ed.2d 122 (1972). The Court in *Hudgens* remanded the case to the Board to allow it to have the first opportunity to accommodate section 7 rights with private property rights. 424 U.S. at 523, 96 S.Ct. at 1038.

The Board's accommodation on remand is particularly relevant to this case. It found that the owner of the shopping center violated section 8(a)(1) by threatening to have the picketers arrested unless they stopped picketing on the mall. *Scott Hudgens,* 230 N.L.R.B. 414 (1977). Crucial to the Board's decision was its finding that the picketers could not identify potential customers of the shoe store when they entered the mall, but only when they entered the store. *Id.* at 416. Indeed, shoppers buying on impulse might not know that they were potential customers of the shoe store when they entered the mall. *Id.* at 417. Since a contrary holding would have insulated store owners in malls from the effects of picketing, a union's most effective weapon in a strike, the Board concluded that shopping center owners' property rights must yield to the picketers' section 7 rights.

The Board distinguished *Babcock & Wilcox* and *Central Hardware* because the unions could identify the targets of their activities in those cases without entering the employers' property. *Id.* at 416. Those cases involved organizational campaigns rather than strikes. The unions seeking to organize the employees could identify them and reach them by telephone or at home with much less difficulty than the union in *Hudgens* could identify and reach the shoe store's customers. Reaching potential customers of the shoe store through advertising would have been expensive. Inasmuch as there were sixty stores in the shopping center, picketing at the entrances to the shopping center would not permit the union to identify and confront potential customers of the shoe store. Picketing on the mall in front of the shoe store was therefore held to be protected activity.

### III

### APPLICATION OF HUDGENS

■ Application of the standard that section 7 rights and private property rights must be accommodated with as little injury to each right as possible requires that we approve the conclusion reached by a three—member panel of the Board in this case that the union should be allowed to station picketers in the 46th floor foyer. The presence of a limited number of picketers in the foyer conducting themselves in a manner that does not impede the use of those facilities on that floor not associated with the restaurant would not substantially injure the petitioner's property rights. A burden of this magnitude is justified because the petitioner has sanctioned an invitation to the public to patronize the restaurant.

Barring the picketers from the foyer, on the other hand, would substantially injure the union because stationing picketers outside the building is not an effective substitute for picketing in front of the restaurant. This is especially clear in the case of lunchtime customers of the restaurant. The parties stipulated that a significant portion of the lunchtime clientele works in the building. While these customers may have noticed the picketers when they entered the building, they may have forgotten

their message hours later at lunchtime.[7] The situation is different with respect to dinnertime clientele, an insignificant portion of which works in the building. Most of this group would see picketers outside the building immediately before dining.

In the final analysis, our approval of the Board's conclusion that pickets should be allowed on the 46th floor rests on the peculiar nature of picketing. Even if the union can adequately inform most of the restaurant's customers of the existence of the strike without stationing picketers on the 46th floor, the union cannot fully implement its section 7 rights without confronting the customers in front of the restaurant. Picketing is more than mere dissemination of information. "The loyalties and responses evoked by picket lines are unlike those flowing from appeals by printed words." *Hughes v. Superior Court*, 339 U.S. 460, 465, 70 S.Ct. 718, 721, 94 L.Ed. 985 (1950). The union's picketing is clearly much more effective on the 46th floor, where restaurant customers and nonstriking employees are identifiable, than at the entrance to the building. Restricting picketing to the entrances to the building would substantially dilute the union's section 7 rights since the effectiveness of a picket line depends on the location. *United Steelworkers v. NLRB*, 376 U.S. 492, 499–500, 84 S.Ct. 899, 904, 11 L.Ed.2d 863 (1949); *Hudgens v. NLRB*, 501 F.2d 161, 168 (5th Cir. 1974), *rev'd on other grounds*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976). While "a union does not have an absolute right to picket at every point of optimum effect . . . ," *Hudgens v. NLRB, supra*, 501 F.2d at 169, allowing picketing on the 46th floor permits the union to implement its section 7 rights effectively. Since this may be allowed while accommodating the petitioner's private property rights, the decision of the Board that the petitioner violated section 8(a)(1) is affirmed.

◼ To support its argument that the picketers should be barred from the 46th floor, the petitioner points out that the Su-preme Court has held that in organizational picketing cases the union has the burden of showing that no other reasonable means of communicating its message to the employees exist. *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 112, 76 S.Ct. 679, 684, 100 L.Ed. 975 (1956); *see Sears, Roebuck & Co. v. Carpenters*, 436 U.S. 180, 205, 98 S.Ct. 1745, 1762, 56 L.Ed.2d 209 (1978). A reasonable, although not perfect, means exists here, the petitioner asserts, and therefore picketers should be confined to the exterior of the building. We disagree. Organizational picketing is more restricted than picketing in support of a strike. Under section 8(b)(7), 29 U.S.C. § 158(b)(7) (1976), it is an unfair labor practice for a union to picket in support of organizational activity unless certain specified conditions are met. And it is possible to reach the targets of organizational activity by telephone or in person, while potential customers can usually only be reached by picketing. We do not think the burden imposed on the union in organizational cases is invariably appropriate in economic strike activity cases.

The Court in *Hudgens* stated that the proper accommodations between section 7 rights and private property rights may vary depending on the nature and strength of the section 7 rights. *Hudgens v. NLRB*, 424 U.S. 507, 522, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976). The right to picket in support of an economic strike is at the core of section 7. *See United Steelworkers v. NLRB*, 376 U.S. 492, 499, 84 S.Ct. 899, 904, 11 L.Ed.2d 863 (1961); *Teamsters Local 807*, 87 N.L.R.B. 502, 504–05 (1949). Accordingly, unions should be allowed to picket in support of a strike in an effective manner whenever possible. A different accommodation might be appropriate if some activity not at the core of section 7, such as area standards picketing, were at issue. *See Sears, Roebuck & Co. v. Carpenters*, 436 U.S. 180, 214, 98 S.Ct. 1745, 1766, 56 L.Ed.2d 209 (1978) (Powell, J., concurring); *but cf. Giant Food Markets, Inc.*, 241 N.L.R.B. No. 105, 6 (June 10, 1977) (area standards picketing permitted on private property).

---

7. However, it seems that the picketers' message would eventually reach those restaurant customers who work in the building and pass the picketers outside the building regularly.

The petitioner also argues that *Hudgens* is inapposite because picketing in an office building is different than picketing in a shopping center mall. We acknowledge the situations are different. The mall in *Hudgens* was apparently quite large, since most of the sixty stores in that shopping center could only be entered from the mall. 424 U.S. at 509, 96 S.Ct. at 1031.[8] The 46th floor foyer of the Seattle–First National Bank Building is quite small when compared to the *Hudgens* mall. Although the mall may not be the functional equivalent of a small town business district, *see Hudgens v. NLRB*, 424 U.S. at 520, 96 S.Ct. at 1036; *Food Employees Local 590 v. Logan Valley Plaza*, 391 U.S. 308, 332–33, 88 S.Ct. 1601, 1615–1616, 20 L.Ed.2d 603 (1968) (Black, J., dissenting), *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), it more resembles one than does the foyer. The foyer is both smaller and normally quieter. While these differences do not require reversal of the Board's decision permitting picketers on the 46th floor, we do believe that the Board should take account of the differences in formulating its order.

This it has not done. As written, the Board's order is too broad.[9] It seemingly permits any protected economic strike activity in the 46th floor foyer. But some activity that is normally permitted during a strike is inappropriate in a foyer of a 50–story office building. For example, a large number of picketers patrolling with placards and chanting slogans might disturb business conducted in that portion of the 46th floor not occupied by the restaurant, disturb business on other floors, interfere with persons changing elevators to go to the 47th floor, or otherwise cause congestion that might lead to violence or damage petitioner's property.

We recognize that there is no evidence in the record that such behavior has occurred. Thus far the union has stationed no more than two persons in the foyer and they have not carried placards but have placed handbills in front of them to form a picket line. But we believe the Board's order must be revised to ensure that the number of persons on the floor and their behavior there is properly restricted.[10] It is appropriate that the Board first consider these matters and revise its order to place proper limits on union activity. This is necessary to accommodate the section 7 rights of the union and the petitioner's private property rights under the circumstances presented in this case with as little destruction of each right as possible. *Hudgens v. NLRB*, 424 U.S. 507, 522–23, 96 S.Ct. 1029, 1037–1038, 47 L.Ed.2d 196 (1976).

The case is remanded to the Board with instructions that it revise its order in accordance with this opinion.

Remanded.

FLETCHER, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's conclusion that the union's picketing on the 46th floor is protected activity under 29 U.S.C. § 157, and that the employer violated section 8(a)(1) of the NLRA, 29 U.S.C. § 158(a)(1) when it threatened to arrest the pickets as trespassers.

8. The Court has also recently affirmed a California Supreme Court decision approving solicitation of signatures on petitions in the central courtyard of a 21–acre shopping center. *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980). The *PruneYard* appellants argued that the California decision, which was based on the state constitution, violated the fifth amendment prohibition against taking of property without just compensation. The Court rejected that argument because, given the size of the shopping center and its accessibility to the general pub-

lic, the presence of a few high school students soliciting signatures did not impair the use of the shopping center so as to amount to a taking. *Id.* at 2042.

9. *See* note 5, *supra*.

10. The Board should also consider whether modification of its order is appropriate to respond to the petitioner's complaint that, since the picketers on the 46th floor are not restaurant employees, the petitioner does not know who the picketers are.

I disagree with the decision to remand the case to the Board for a narrowing of its order. The majority would have the Board issue an order limiting the number and activity of Union pickets, despite the absence of any indication in the record that illegal picketing has occurred or is threatened. The action required of the Board is entirely outside its jurisdiction and contrary to all authority.

The courts may not enjoin picketing that is not unlawful and poses no threat to persons or property. Norris–La Guardia Act, 29 U.S.C. § 101 *et seq.* Similarly, the National Labor Relations Board is authorized to issue orders only against "any person named in [an unfair labor practice] complaint" to cease and desist from unlawful practices found to have been committed, and to take affirmative steps to effectuate national labor policy. 29 U.S.C. § 160(c). The Board has no authority to restrain prospective unlawful practices unless they are related to unlawful practices that the Board has found.

> [W]e can hardly suppose Congress intended that the Board should make or the court should enforce orders which could not appropriately be made in a judicial proceeding.

*NLRB v. Express Publishing Co.*, 312 U.S. 426, 435, 61 S.Ct. 693, 699, 85 L.Ed. 930 (1941). *See also NLRB v. Challenge–Cook Brothers of Chicago, Inc.*, 374 F.2d 147, 153 (6th Cir. 1964).

No showing has been made in this case that a trespass occurred or that any dangerous or otherwise inappropriate activity took place on the 46th floor. Furthermore, no unfair labor practice complaint was ever lodged against the union. Therefore, no order may be made against it, much less one such as that contemplated by the majority. 29 U.S.C. § 160(c).

I would enforce the order of the Board.