NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

VILLA AVILA, Palm Springs Sun Dial
and Tom Sawyer Construction Co.,
Respondents.

Laborers International Union of North
America, Local 1184, AFL–CIO,
Intervenor.

No. 81–7155.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1982.

Decided March 29, 1982.

Linda Dreeben, N. L. R. B., Washington, D. C., for petitioner; Kenneth B. Hipp, N. L. R. B., Washington, D. C., on brief.

James Winkler, Venice, Cal., for respondents; Stephen D. Atkinson, Atkinson, Andleson, Loya, Rudd & Romo, Long Beach, Cal., on brief.

Before CHOY, GOODWIN and FARRIS, Circuit Judges.

GOODWIN, Circuit Judge.

The Board seeks enforcement of its cease and desist order directed to three contractors who had refused union business agents permission to enter construction sites under their control on what the administrative law judge found to be legitimate union business. Enforcement is granted, subject to certain guidelines.

In reviewing conflicting testimony in the record this court was aided by a comprehensive memorandum of findings and conclusions prepared by the administrative law judge. We are required to treat the facts so found as established if they are supported by substantial evidence on the record as a whole. *Universal Camera Corp. v. N. L. R. B.*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *N. L. R. B. v. Pacific Intern. Rice Mills, Inc.*, 594 F.2d 1323, 1325 (9th Cir.), *cert. denied*, 444 U.S. 898, 100 S.Ct. 206, 62 L.Ed.2d 134 (1979). The record supports the factual determinations. *See N. L. R. B. v. Anchorage Times Publishing Co.*, 637 F.2d 1359, 1364 (9th Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 137, 70 L.Ed.2d 115 (1981); *Clear Pine Mouldings, Inc. v. N. L. R. B.*, 632 F.2d 721, 724 (9th Cir. 1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2317, 68 L.Ed.2d 841 (1981).

In *N. L. R. B. v. Babcock & Wilcox Co.*, 351 U.S. 105, 112, 76 S.Ct. 679, 684, 100 L.Ed. 975 (1956), the court stated the objective of the Board to be the accommodation of employees' rights[1] to have their collective bargaining agreement enforced and administered and the employer's private property rights "with as little destruction of one as is consistent with the maintenance of the other." This language has been reaffirmed as stating the guiding principle to be ap-

1. 49 Stat. 452, Ch. 372, § 7, July 5, 1935 (hereinafter the "Act"), now 29 U.S.C. § 157 (hereinafter "§ 7", reads as follows:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title."

plied in settings other than a union's organizational campaign. *See, e.g., Hudgens v. N. L. R. B.*, 424 U.S. 507, 522, 96 S.Ct. 1029, 1037, 47 L.Ed.2d 196 (1976). The accommodation, however, may vary depending on the nature and strength of the asserted § 7 rights and private property rights. *See, e.g., Seattle-First Nat. Bank v. N. L. R. B.*, 651 F.2d 1272, 1275 (9th Cir. 1980). The primary responsibility for making that accommodation rests with the Board. *Hudgens, supra*, 424 U.S. at 522, 96 S.Ct. at 1037.

█ In making this accommodation, the courts and the Board have recognized a distinction between activities conducted on the premises by employees and those by nonemployees. When nonemployee union representatives seek to enter private property, the Board must consider not only the strength of the employer's and employees' rights and interests, but also whether union representatives have reasonable alternatives to entry onto the employer's property.

█ Although the companies in this case were not the primary employers of the employees whose interests the unions claim they protect, the companies were nevertheless "employer(s)" within the meaning of § 2(2) of the Act. Section 2(3) of the Act similarly states that the employees protected by the Act "shall not be limited to the employees of a particular employer." Accordingly, the companies are employers within the meaning of § 8(a)(1) with respect to the employees working on the jobsites. *Seattle-First Nat. Bank v. N. L. R. B., supra*, 651 F.2d at 1273, n.2.

█ The Board admits that the precise issue in this case has not yet been squarely before the courts, but contends that by analogy cases dealing with nonconstruction work places and other types of unions provide adequate guidance for the result here. We agree.

Here we have nonunion general contractors who are in control of worksites which are visited from time to time by union workers brought on the premises to perform subcontracts. Some of the subcontractors have bargaining agreements with building-trades unions and others do not. Those workers who are covered by bargaining agreements have rights that are protected under § 7 of the Act. These rights include the right to be visited by union representatives at reasonable times and places to conduct legitimate union business. In balancing the rights of persons in possession of property against the statutory rights of unions to exercise § 7 rights, the Board has broadly construed § 7 and has given the union representatives the benefit of a presumption that requested visits to the job site are for legitimate § 7 purposes until the contrary appears.

█ We agree with the Board. Without enforcement and implementation, the § 7 rights could become meaningless. Enforcement of an agreement is a necessary extension of the organizational and picketing activity engaged in to obtain it. *See B & M Excavating, Inc.*, 155 N.L.R.B. 1152, 1154 (1965), *enforced*, 368 F.2d 624 (9th Cir. 1966).

The subcontractors' employees have a statutory interest in the general contractor allowing union agents reasonable access to the jobsite. The role of the union representative is important in assuring that the employees realize the full measure of benefits won through collective bargaining. The agent's knowledge, experience, and expertise can be important in identifying safety problems and contract violations. Compliance with many contract provisions can be effectively policed only on the premises where the agent may observe conditions during working hours. The administrative law judge, and the Board in approving the decision, struck a reasonable balance. The rights of the organized workers to have their § 7 rights protected by union representatives and the rights of property owners to be free of illegal or vexatious incursions by persons with no legitimate business on their premises are equally protected by the proposed order.

The Board order is entitled to be enforced, subject, as noted, to the following guidelines:

(1) Any visitor can be required to report to the project office and to state in general terms his or her business before being allowed to proceed into the work area;

(2) Union representatives who request permission to conduct legitimate § 7 business in the work area are presumed to be on legitimate union business until, by their conduct, they indicate the contrary, and

(3) In the event of vandalism, illegal work stoppage or illegal interference with work, the owner or occupier of the worksite may require that the visitor agree to be accompanied by an escort representing the owner or occupier of the premises until after the dispute or disorder has been resolved.

Subject to the foregoing qualifications, the Board's order is enforced.