**NACHMAN CORPORATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 14566.**

United States Court of Appeals Seventh Circuit.

Oct. 7, 1964.

Fredric N. Richman, Sidney R. Korshak, David H. Mendelsohn, Chicago, Ill., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, George H. Cohen, Atty., Arnold Ordman, Gen. Counsel, Dominick L Manoli, Assoc. Gen. Counsel, Warren M. Davison, Seymour Strongin, Attys., N. L. R. B., for respondent.

Before DUFFY, SCHNACKENBERG and KILEY, Circuit Judges.

DUFFY, Circuit Judge.

This is a petition by Nachman Corporation to review and set aside an order [1] of the National Labor Relations Board (Board) issued against petitioner on February 18, 1964, pursuant to Section 10 (c) of the National Labor Relations Act (Act), 29 U.S.C. § 151 et seq. The Board, in its answer, requested enforcement of its order.

The Board, in agreement with the Trial Examiner, found petitioner discharged Joyce Burton because of her union activities, and because she gave testimony in support of a complaint against petitioner in an earlier unfair labor practice proceeding.

In June 1962, the Union [2] engaged in an organizational campaign among petitioner's employees. A Board-conducted election was held on September 14, 1962 which the Union lost. The results of this election were set aside and a new election was held on February 15, 1963. Again, the Union lost.

In the meantime, on October 17, 1962 and thereafter, unfair labor practice charges were filed against petitioner alleging the discriminatory discharge of six employees and other acts and conduct in violation of Section 8(a) (1) of the Act. A hearing was held at which Joyce Burton testified as a witness for the Board concerning petitioner's interrogations, threats and surveillance. Her testimony was credited, and the Trial Examiner found that petitioner had engaged in conduct of this character.

The Trial Examiner further found petitioner had discriminatorily discharged three employees and had engaged in other acts of interference, restraint and coercion. In that proceeding, the Board adopted (with some modifications not here material) the findings, conclusions and recommendations of the Trial Examiner.

Burton has been described as the second most active union enthusiast in petitioner's plant. She was first employed on January 29, 1962, and worked continuously until her discharge on March 4, 1963 except for a two-week lay-off during August 1962. During this period, Burton received three wage increases, the last one in the first part of February 1963.

As an assembler, Burton operated one of about twenty machines which produced mattress springs. The daily production

---

1. The decision and order of the Board are reported at 146 N.L.R.B. No. 6.

2. International Union, Allied Workers of America, AFL-CIO.

quota established by the Company for Burton's machine was 74 units.

It is not disputed that Burton was a slow worker, but the quality of her work was good. She had been employed by petitioner for some fourteen months without any serious complaints regarding her job performance. There were periods when she made her quota once a week yet, at no time, was there any threat of discharge due to the manner in which she carried out her job assignment.

Burton was assigned to machine No. 9 when she worked on the night shift. She testified her work was affected due to mechanical difficulties with her machine, and that it required frequent repairs. She also complained as to the quality and suitability of materials which were, at times, furnished to her.

Dennis Kellogg was a foreman of the second or night shift. When Burton was assigned to that shift [3] and was telling Kellogg of her experiences on the day shift, Kellogg told her she would not have to put up with that "rigamaroll" on the night shift as it didn't make any difference to him whether the union was in or out. On another occasion, Kellogg warned Burton—"I had better tell you right now, they are going to ride you like they did the others."

Burton replied to Kellogg saying—"As long as my machine runs and I have good material to work with, I will keep making production and if I don't, I will tell your Dad [4] to speak to you about it."

On the night of March 4, 1963, foreman Miller took Burton to his office and informed her for the first time that the Company was having a cut-back in the work force, and that she "had been picked as one to go." Burton asked if she were being laid off because of her union activities. Miller said it was because of her production. Burton replied that she could make production if she had good materials and a good machine. At that point, Superintendent Earl Kellogg entered the office and said he wanted no more discussion of the matter. Burton asked if she were being laid off or fired, and Superintendent Kellogg replied— "You are fired, this couldn't be a more permanent arrangement than it is."

The question in this case is—What, in fact, motivated the discharge of Joyce Burton? N. L. R. B. v. Marsh Supermarkets, Inc., 7 Cir., 327 F.2d 109. The Board concluded that petitioner did not discharge Burton because of her low production but, instead, seized upon a reduction in the work force as a pretext to eliminate a strong union advocate who had given evidence against it in a previous proceeding.

We must here determine whether substantial evidence on the record, considered as a whole, supports the Board's finding that petitioner discharged Joyce Burton because of her union activities, and because she gave testimony against petitioner in a prior unfair labor practice hearing.

█ It is well settled that the presence of valid grounds for an employee's discharge does not legalize it where "other circumstances reasonably indicate that the union activity weighed more heavily in the decision to fire him than did dissatisfaction with his performance." N. L. R. B. v. Whitin Machine Works, 1 Cir., 204 F.2d 883, 885. In accord are many decisions including Sunshine Biscuits, Inc. v. N. L. R. B., 7 Cir., 274 F.2d 738, 742; N. L. R. B. v. Vail Mfg. Co., 7 Cir., 158 F.2d 664, 666.

This Court stated the applicable rule in N. L. R. B. v. Howe Scale Co., 7 Cir., 311 F.2d 502, 505, where we said: " * * * [E]ven though a valid ground for discharge exists, there is nevertheless an un-

---

3. Burton was first employed on the night shift, but after the August 1962 layoff, she was recalled to work on the day shift where she remained until the early part of October 1962 when she was again transferred to the night shift. She re-

mained on the night shift until the date of her discharge.

4. Earl Kellogg, father of Dennis Kellogg, was night superintendent at the plant at that time.

fair labor practice if in fact the reason for the discharge was Union activities on the part of the employee."

 Petitioner urges that the fact it retained Elsie Brotherton, the number 1 union adherent, and certain other union sympathizers, dissipates any unlawful motive in connection with the discharge of Joyce Burton. However, it is established that a discriminatory motive, otherwise established, is not disproved by an employer's proof that it did not weed out all union adherents. N. L. R. B. v. Shedd-Brown Mfg. Co., 7 Cir., 213 F.2d 163, 174–175; N. L. R. B. v. Nabors, 5 Cir., 196 F.2d 272, 276.

Petitioner has presented several additional arguments which we have carefully considered. We deem them to be without merit, and it would unduly extend this opinion to discuss them.

The order of the National Labor Relations Board hereinbefore described, will be enforced.