# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 20-1030**

**September Term, 2020**

FILED ON: MAY 14, 2021

DH LONG POINT MANAGEMENT LLC,
    PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
    RESPONDENT

UNITE HERE LOCAL 11,
    INTERVENOR

Consolidated with 20-1096

On Petition for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board

Before: TATEL, GARLAND\* and WILKINS, *Circuit Judges.*

## J U D G M E N T

This petition for review of a decision of the National Labor Relations Board was presented to the Court, and briefed and argued by counsel. The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. RULE 36(d). For the reasons stated below, it is

**ORDERED and ADJUDGED** that the petition be **DENIED** and the cross-petition for enforcement be **GRANTED**.

---

\* Judge Garland was a member of the panel at the time this case was submitted but did not participate in the final disposition of the case.

# I.

Petitioner DH Long Point Management LLC ("DH Long Point" or "Company") operates a 600-room resort named Terranea in Rancho Palos Verdes, California. The resort has several restaurants, each of which operates its own kitchen. All of the kitchens are under the supervision of an executive chef. One of the kitchens is the in-room dining kitchen, which prepares room-service orders 24 hours per day and serves the lobby lounge and coffee bar. The kitchen is split into a hot side and a cold side. The hot side prepares more "expensive protein dishes," while the cold side prepares pizzas, fruit dishes, and other dishes. J.A. 261. A chef de cuisine manages the kitchen, and a sous chef works under him or her. The kitchen is also staffed by hourly workers ranked in the following order: (1) a junior sous chef, (2) cooks (with three ranks: Cook I, Cook II, Cook III), (3) cook-interns, and (4) temporary helpers.

Freddy Lovato began working as an hourly employee in 2009. In 2012, Lovato was promoted to the role of junior sous chef. In this role, Lovato was assigned the dinner shift, which spanned from 2 until 10:30 pm. Lovato was expected to prepare dishes at his assigned station, but when the chef de cuisine and sous chef were not in the kitchen, Lovato was also responsible for monitoring the line and correcting any mistakes he saw.

In 2017, UNITE Here Local 11 ("Union") initiated a campaign to organize the resort's employees. Lovato was part of the union-organizing committee. In October 2017, the Union began to campaign publicly, and Lovato was the most prominent advocate for union representation, and he was named in four news articles about the campaign. In March 2018, Lovato also participated in a delegation that sought to meet with the resort's president about the campaign. In May 2018, Lovato was the sole employee who joined Union representatives in delivering signatures to city hall in support of an initiative focusing on work conditions and the minimum wage. In response to the Union's campaign, DH Long Point began anti-union organizing. This included mandatory employee meetings where senior managers discussed their opposition to the Union. At one meeting, the resort's president warned employees that the Union would represent the employees "over my dead body." J.A 271.

Central to this dispute are four incidents in 2018 involving the Company's kitchens. First, on May 19, a guest ordered a gluten-free pizza. The events surrounding the pizza's preparation are disputed, but the pizza was not properly prepared and consequently the guest had to be hospitalized after suffering an allergic reaction. No employee or supervisor faced any punishment. Second, on May 25, a guest ordered a gluten-free mac-and-cheese. Lovato was working on the hot side of the kitchen, and he was the most senior employee in the kitchen at the time. Jose Flamenco, a Cook II, prepared the mac-and-cheese dishes about five to eight feet away from Lovato. After the guest complained that her child had vomited due to an allergic reaction to the mac-and-cheese, Mona Guerrero, the chef de cuisine, spoke with Flamenco and Lovato for less than a minute about the incident. Lovato suggested that the cheese sauce could have caused the allergic reaction. Guerrero subsequently emailed Bernard Ibarra, the executive chef, to notify him of the incident. Guerrero and Ibarra then met with the head of human resources to discuss disciplinary action, and Guerrero and Ibarra subsequently issued a written warning to Flamenco and a final written warning to Lovato, bypassing the Company's progressive discipline policy. Third, on June 29, an intern prepared a fruit dish with pineapple despite the order sheet requesting

no pineapple due to an allergy. The intern received a verbal warning. Finally, on August 8, Lovato was preparing chicken wings for an order. After he was told to change the sauce, Lovato rinsed the wings in water but was told by Guerrero to use new wings. Lovato placed the wings in a container in the walk-in cooler. Guerrero then saw the wings in the cooler and discarded them. Guerrero subsequently reported the wings incident to Ibarra and the head of human resources, who all agreed to discharge Lovato as an escalation from the final written warning he received after the mac-and-cheese incident. Lovato was then discharged five days later.

The Union then filed a charge with the National Labor Relations Board ("NLRB" or "Board"), alleging that Lovato was discharged due to his pro-union advocacy. The Company responded that Lovato was not subject to the protections of the National Labor Relations Act ("Act") because he was a statutorily exempt supervisor. The Company also claimed that Lovato's discharge was unrelated to his pro-union activities. An Administrative Law Judge ("ALJ") held a four-day hearing before finding that Lovato was not a statutorily exempt supervisor and that the Company was motivated by anti-union animus when it discharged Lovato. The Board then rejected the Company's exceptions and almost entirely adopted the ALJ's findings, declining only to rely on the ALJ's finding that the human resources manager implicitly admitted that she knew about Lovato's pro-union activities and Petitioner's president's correspondence with city officials. The Company petitioned for review and the Board cross-petitioned for enforcement.

On petitions for review of an NLRB order, we "must uphold the judgment of the Board unless its findings are unsupported by substantial evidence, or it acted arbitrarily or otherwise erred in applying established law to the facts of the case." *Novato Healthcare Ctr. v. NLRB*, 916 F.3d 1095, 1100 (D.C. Cir. 2019) (citing *Spurlino Materials, LLC v. NLRB*, 805 F.3d 1131, 1136 (D.C. Cir. 2015); *Bally's Park Place, Inc. v. NLRB*, 646 F.3d 929, 935 (D.C. Cir. 2011)). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *NLRB. v. Ingredion Inc.*, 930 F.3d 509, 514 (D.C. Cir. 2019) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951)). We must therefore "affirm the Board's findings unless 'no reasonable factfinder' could find as it did." *Id.* (quoting *Alden Leeds, Inc. v. NLRB*, 812 F.3d 159, 165 (D.C. Cir. 2016)). Under this deferential standard of review, we deny the petition for review and grant the cross-petition for enforcement.

## II.

The NLRA does not apply to "any individual employed as a supervisor." 29 U.S.C. § 152(3). The Act sets out the conditions that establish whether an individual is a supervisor. In pertinent part, the Act defines a supervisor as "any individual having authority . . . to direct" other employees as long as "the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." *Id.* § 152(11). Employees are supervisors as understood by the Act "if (1) they hold the authority to engage in any 1 of the 12 listed supervisory functions, (2) their 'exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment,' and (3) their authority is held in the interest of the employer.'" *NLRB v. Kentucky River Cmty. Care, Inc.,* 532 U.S. 706, 713 (2001) (quoting *NLRB v. Health Care & Retirement Corp. of America*, 511 U.S. 571, 573–74 (1994)). "The burden of proving the applicability of the supervisory exception . . . fall[s] on the party asserting it." *Id.* at 711. The parties' dispute is over (1) whether Lovato exercised the independent judgment necessary to

qualify as a supervisor and (2) whether Lovato was responsible for the failings of the kitchen staff. Because there was substantial evidence for the Board to conclude that Lovato did not exercise independent judgment and is thus not exempted from the Act, we do not reach the question of whether he was held responsible for the errors of his subordinates.

To prove that an employee exercised independent judgment, the employer must establish that the "individual must at minimum act, or effectively recommend action, free of the control of others and form an opinion or evaluation by discerning and comparing data." *In re Oakwood Healthcare, Inc.*, 348 NLRB 686, 693 (2006).[1] Employees are not supervisors when their judgment "is dictated or controlled by detailed instructions" that are "set forth in company policies or rules" or in "the verbal instructions of a higher authority." *Id.* But "the mere existence of company policies does not eliminate independent judgment from decision-making if the policies allow for discretionary choices." *Id.* The statute thus sets a baseline: the act that renders an individual a supervisor "must involve a degree of discretion that rises above the 'routine or clerical.'" *Id.*

The Board had substantial evidence to conclude that Petitioner failed to satisfy its burden to prove that Lovato exercised independent judgment. Here, the Board found that junior sous chefs had to strictly adhere to the procedures set by the higher-ups in preparing the dishes. Rather than exercise independent judgment, Lovato and the other junior sous chefs were only expected to ensure that the dishes did not deviate from the recipes and procedures established by their superiors. And although Petitioner can point to testimony that Lovato oversaw the cooking line, was responsible for checking the dishes, and sometimes monitored the kitchen alone, this testimony does not contradict the fact that he did so while following detailed instructions that stripped him of independent judgment. We therefore reject the challenge to the finding that Petitioner failed to satisfy its burden showing that Lovato exercised independent judgment and is not exempt from the NLRA.

**III.**

Petitioner also contends that the Board erred in concluding that substantial evidence supported the Board's finding that Petitioner punished Lovato because of his pro-union activities. In evaluating claims of union animus, the Board applies the *Wright Line* test. *See Tasty Baking v. NLRB*, 254 F.3d 114, 125 (D.C. Cir. 2001) (citing *Wright Line*, 251 N.L.R.B. 1083, 1089 (1980)). Under the *Wright Line* test, the Board "determine[s] whether an unlawful motive underlay an adverse action taken by an employer." *Napleton 1050, Inc. v. NLRB*, 976 F.3d 30, 40 (D.C. Cir. 2020). First, the "[t]he General Counsel must make a prima facie showing sufficient to support the inference that protected . . . conduct was a motivating factor behind" the termination. *Fort Dearborn Co. v. NLRB*, 827 F.3d 1067, 1072 (D.C. Cir. 2016) (internal citations and quotation marks omitted). "Relevant factors in determining an employer's motive 'include the employer's knowledge of the employee's union activities, the employer's hostility toward the union, and the timing of the employer's action.'" *Ozburn-Hessey Logistics, LLC v. NLRB*, 833 F.3d 210, 218

---

[1] Petitioner cites pre-*Oakwood* decisions to argue that the Board failed to explain its divergence from its binding precedent. However, the decisions Petitioner cites either applied a different analysis than *Oakwood* or are distinguishable from this case. The Board thus did not have an obligation to explicitly abrogate these decisions in deciding this case.

4

(D.C. Cir. 2016) (quoting *Fort Dearborn Co.*, 827 F.3d at 1072) (internal quotation marks omitted). Once the Board has made a *prima facie* showing of animus as a motivating factor, "the burden shifts to the [employer] to show that it would have taken the same action in the absence of the unlawful motive." *Tasty Baking Co.*, 254 F.3d at 126. The employer "avoid[s] an unfair labor practice finding by showing by a preponderance of evidence that the worker would have been fired even if he had not been involved with the union." *Davis Supermarkets Inc v. NLRB*, 2 F.3d 1162, 1167 (D.C. Cir. 1993) (internal quotation marks omitted).

It is undisputed that Lovato engaged in protected activity and that his supervisors who punished him were aware of this activity. Instead, Petitioner argues that the record does not support the Board's finding that it had the requisite anti-union motive when it punished Lovato for the mac-and-cheese incident, and that, in any event, the Board did not have substantial evidence that this animus was the motivating factor for the adverse actions taken against Lovato.[2]

In making its findings, the Board had ample evidence to support that the General Counsel made a *prima facie* showing that union animus was a motivating factor in Lovato's punishment. The General Counsel based its showing on a number of factors. First, Petitioner's president stated that she would allow unionization "over [her] dead body." J.A. 271; *see, e.g.*, *Parsippany Hotel Mgmt. Co. v. NLRB*, 99 F.3d 413, 423 (D.C. Cir. 1996) (finding animus when a high-level manager made anti-union comments that were never repudiated despite not being involved in the disciplining of the employee). Second, Petitioner conducted a cursory investigation into the mac-and-cheese incident that led to the issuance of the final written warning to Lovato. Third, Petitioner bypassed its progressive discipline policy in issuing the final written warning to Lovato. *See, e.g.*, *United Food & Commercial Workers Union Local 204 v. NLRB*, 447 F.3d 821, 826 (D.C. Cir. 2006) (per curiam) (finding that the company "failed to follow its progressive discipline policy, instead firing [the employee] before she had accrued enough warnings," which permitted the Board to infer, independent of other testimony, "that her union support . . . was the real reason for her discharge"). Fourth, Petitioner punished Lovato more severely than Flamenco even though the human resources manager thought they were being punished for the same conduct. *See, e.g.*, *Ozburn-Hessey Logistics, LLC*, 833 F.3d at 223 (concluding that disparate treatment can help establish animus when the punishment of one employee is "more severe than the discipline the Company imposed on other, similar offenders"). Finally, Lovato's supervisors made false and misleading testimony during the hearing. *See, e.g.*, *DHSC, LLC v. NLRB*, 944 F.3d 934, 938 (D.C. Cir. 2019). These factors, when taken together, are sufficient for the Board to conclude that the General Counsel met its obligation to make a *prima facie* showing that anti-union animus was a motivating factor in punishing Lovato.

Nor has Petitioner shown that the Board did not have substantial evidence to support its finding that Petitioner would not have taken the same action in the absence of the unlawful motive. First, Petitioner unpersuasively argues that its failure to punish other union supporters shows that it would have punished Lovato anyway. But as we have repeatedly made clear, "an employer's

---

[2] Petitioner also raised a challenge to the Board's finding that Lovato was unlawfully discharged for the wings incident in its reply brief. But "[i]ssues may not be raised for the first time in a reply brief." *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) (quoting *Rollins Envt'l Servs. v. EPA*, 937 F.2d 649, 652 n.2 (D.C. Cir. 1991)). Petitioner has thus forfeited its challenge to the Board's findings with regards to the wings incident.

discriminatory motive is not disproved by evidence showing that it did not weed out all union adherents.'" *Clark & Wilkins Indus., Inc. v. NLRB*, 887 F.2d 308, 316 n.19 (D.C. Cir. 1989) (quoting *Nachman Corp. v. NLRB*, 337 F.2d 421, 424 (7th Cir. 1964)). Second, Petitioner fails to gain traction by pointing to the extended period of time during which it did not punish Lovato even though he was engaged in pro-union advocacy. Lovato's pro-union activities continued until shortly before the mac-and-cheese incident, which was the first instance where Petitioner could have conceivably punished Lovato. Third, while Petitioner contends that it had a good-faith belief that Lovato engaged in the misconduct in question, it can point to no other instance where a sous chef was given a warning of any kind for the errors of a cook. *See Fort Dearborn Co.*, 827 F.3d at 1076 (holding that the honest-belief exception only applied when the actions at issue "were consistent with" the employer's "policies and past practices" (emphasis removed)). Thus, the Board had substantial evidence to determine that Petitioner has failed to meet its burden of showing that it would have taken the same adverse actions against Lovato for the mac-and-cheese incident even absent the unlawful motive.

## IV.

Consistent with the foregoing, we deny the petition for review and grant the cross-petition for enforcement. Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* FED. R. APP. P. 41(B); D.C. CIR. RULE 41.

## **Per Curiam**

FOR THE COURT:
Mark J. Langer, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk