# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 12, 2024          Decided April 9, 2024

No. 23-1029

CP ANCHORAGE HOTEL 2, LLC,
D/B/A HILTON ANCHORAGE,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

Consolidated with 23-1039

On Petition for Review and Cross-Application
for Enforcement of an Order of
the National Labor Relations Board

*Maurice Baskin* argued the cause for petitioner. With him on the briefs was *Emily Carapella*.

*Kellie Isbell*, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *Jennifer A. Abruzzo*, General Counsel, *Peter Sung Ohr*, Deputy General Counsel, *Ruth E. Burdick*, Deputy Associate General Counsel, *David Habenstreit*, Assistant General Counsel, *Milakshmi V. Rajapakse*, Supervisory Attorney, and *Jared D. Cantor*, Senior Attorney.

Before: KATSAS and GARCIA, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: This case involves an unfair labor practice charge filed with the National Labor Relations Board ("Board" or "NLRB") by Unite Here! Local 878, AFL-CIO ("Union"), charging CP Anchorage Hotel 2, LLC d/b/a Hilton Anchorage ("Company") with violations of the National Labor Relations Act ("Act"). The Union represents the hotel's housekeepers for purposes of collective bargaining. The dispute between the Company and Union arose in 2018, when the Company substantially renovated the hotel, including replacing the old bathtub showers in about half of the hotel guest rooms with walk-in, glass-walled showers. After the renovations were largely complete, the Company unilaterally required the housekeepers to meet the same room-cleaning work quotas that were in place before the renovations, even though the housekeepers claimed that the rooms were harder to clean and involved different work skills and equipment. The Company also threatened to discipline housekeepers for failing to meet the more difficult room-cleaning quotas.

The Union filed an unfair labor practice charge with the Board challenging the unilateral actions taken by the Company insofar as the actions affected bargaining unit employees. The Board's General Counsel issued a Complaint, charging the Company with violating Sections 8(a)(1) and 8(a)(5) of the Act. *See* 29 U.S.C. § 158(a)(1), (5). After a hearing before an Administrative Law Judge ("ALJ"), the Board found that the Company had committed unfair labor practices by: (1) failing

to provide the Union with requested information relevant to bargaining; (2) unilaterally changing its housekeepers' duties when it increased the work required per room but maintained the same room-cleaning quota; and (3) threatening its housekeepers with discipline if they failed to comply with the increased workload requirements. *See CP Anchorage Hotel 2*, 371 N.L.R.B. No. 151, at \*3 (Sept. 29, 2022) ("*Board Decision*"). The Board ordered the Company to rescind the unlawful changes to the housekeepers' working conditions to the full degree practicable and to make the housekeepers whole for any loss of earnings from the Company's unlawful conduct. *Id.* at \*10.

In its petition for review to this court, the Company's principal claim is that "decisions like the renovation decision at issue here do not require bargaining with a union." Brief ("Br.") of Petitioner 12. But on the facts of this case, the Company had an obligation to give the Union at least a meaningful opportunity to bargain, regardless of whether the changes to the housekeepers' duties were better thought of as a separate decision regarding the conditions of employment or as merely the effect of a business decision about what kinds of rooms to offer hotel customers. A more apt summary of this case is found in the brief submitted on behalf of the Board:

> Although the Company had no obligation to bargain with the Union over its choice to renovate the hotel, it had an obligation to provide information to the Union about the renovations—so that the Union could evaluate possible impacts on its members—and to bargain over increases in employee workloads following the renovations. Substantial evidence supports the Board's findings that the Company failed to meet these obligations, thus violating the Act, and then committed a further unfair labor practice by threatening employees

with discipline for failing to comply with their unilaterally increased workloads.

Br. for the NLRB 14. We agree. Accordingly, we deny the petition for review and grant the Board's cross-application for enforcement of its order.

## I. BACKGROUND

### A. Factual Background

The Company operates a full-service hotel in Anchorage, Alaska. The hotel consists of about 600 rooms across two towers, the Anchorage Tower and the West Tower. During the relevant period, the Union represented a bargaining unit that included housekeepers, housepersons, and housekeeping inspectors. Since 2016, the housekeepers have been required to clean a quota of 17 rooms per eight-hour shift, with a few exceptions, depending on the types of rooms and how far the housekeepers have to travel within the hotel to clean them. Housekeepers exceeding the quota receive a bonus of $4.95 per extra room cleaned.

On February 26, 2018, the Company began renovations to the hotel. Among the changes, the Company replaced the showers in about 300 rooms, or around half of the hotel's guest rooms. The old showers were comprised of bathtubs with fabric shower curtains and inner liners, whereas the new showers were walk-in with glass doors. The Company also added new furniture to the rooms. Sofa beds, previously an amenity found only in suites, were added to more rooms, including most rooms with king-sized beds in the West Tower. In addition, the Company replaced all pillows with new ones that were heavier

and longer, and added an extra pillow for each double-sized bed.

As a result of these changes, the renovated rooms posed cleaning duties that differed from the cleaning work involved in the unrenovated rooms. To clean the old showers, housekeepers sprayed the bathtub curtains and liners with a cleaning solution and then wiped them. If a curtain or liner was dirty, a housekeeper would tie it in a knot and a houseperson would replace it. In contrast, housekeepers must keep the new glass-walled showers streak-free by removing smudges and water marks. To achieve this, housekeepers use squeegees or rags to clean both sides of the new glass panels, including the tracks underneath the sliding door and the narrow area where the sliding door overlaps with the stationary panel. The housekeepers must also remove and clean the newly installed, grated metal drain covers. In addition to the renovated showers, the new furniture in the rooms also affected the housekeepers' cleaning tasks. When guests use sofa beds, which are now in more rooms post-renovation, housekeepers must remove the bed linens and fold the mattress back into the sofa. Housekeepers also need to change more pillows in guest rooms with double-sized beds than before, as well as handle heavier and longer pillows in all of the rooms.

On February 28, 2018, two days after renovations began, the Union sent an information request to the Company. This first information request asked for a description of the renovation work to be performed, the anticipated or actual start and completion dates, and whether there would be any change in work requirements for Union-represented employees. On March 6, 2018, the Company replied that the number of glass-walled showers was "to be determined," claimed "[t]here

should be no changes in work requirements based on the renovation," and estimated a completion date of May 31, 2018 for renovations in the West Tower. Joint Appendix ("J.A.") 255-56.

On June 19, 2018, with the renovations still ongoing, the Union inquired again about the expected date of completion. In addition, the Union asked "which guestrooms underwent changes to walk-in showers," as well as the measurements of the glass in the new showers so that the Union could "determine the impact on housekeeper workload." J.A. 267. On July 2, 2018, having received no response, the Union repeated its request. The next day, the Company replied that the projected completion date for renovations in both towers was approximately December 31, 2018, that "[n]o rooms ha[d] been converted yet to showers," and that it was "still being determined which rooms [would] receive the showers." J.A. 269. On July 6, 2018, the Company supplemented its answers with a photograph of a walk-in, glass-walled shower and its measurements.

On November 20, 2018, the Union sent a third request for information to the Company. In relevant part, the Union asked which rooms or floors would be or had been converted to glass-walled showers, what classifications of employees would clean the glass doors, what tools the Company considered appropriate for cleaning the glass doors, and what training, if any, would be conducted with respect to the new showers. The Union further added that, in its experience, "the introduction of glass shower doors has a material impact on the workload of housekeepers due to the increased physical demands involved with the task, the difficulty of cleaning glass without leaving water spots, and the impact upon work rate owing to the

introduction of a more time-consuming work process." J.A. 337. The Union requested time-and-motion studies "before any housekeeper is required to engage in this task" and to meet and "confer" with the Company about the requested studies and the housekeepers' workload. *Id.*

On December 6, 2018, a Company representative responded that renovations to the West Tower were completed on November 5, 2018, and that renovations to the Anchorage Tower began on September 24, 2018. On January 4, 2019, the Company representative supplemented his response, stating that "approximately 300 showers" would be renovated "throughout both towers," "[s]taff [were] expected to clean the glass shower doors," "[v]arious cleaning products and tools" would be provided, and the Company "d[id] not believe it [took] staff more time to clean rooms with walk-in showers than . . . rooms with bathtubs." J.A. 339-40. The Company representative did not respond to the Union's question about training, but he did express a willingness to "meet to discuss any information or concerns the Union or staff may have." *Id.*

In February 2019, three housekeepers complained to the Company that it was unfair they had to clean 17 rooms with glass-walled showers, when some other housekeepers were not meeting their quotas. In response, the Company convened the housekeepers and instructed the housekeepers to sign and date a document reminding them of their room-cleaning quota and notifying them that failure to comply could result in discipline, up to and including termination. About a month later, a group of housekeepers met with the Union and the Company to voice concerns regarding the changed work duties. The housekeepers shared that the glass-walled showers were harder to clean, and that cleaning the new showers caused them physical pain.

Some also asserted that the number and size of the new pillows made it harder to meet their quota. A Company representative replied that it would take time to get used to the changes, and that the housekeepers would receive training and new tools. There is no evidence in the record that any training was provided.

### B. Procedural History

On September 20, 2019, after investigating an unfair labor practice charge filed by the Union, the Board's General Counsel issued a Complaint against the Company. The Complaint alleged that the Company violated Sections 8(a)(1) and (5) of the Act by: (1) failing to furnish requested information to the Union; and (2) changing housekeepers' duties by requiring the housekeepers to satisfy the existing room-cleaning quota despite the increased time needed to clean the renovated rooms, without first bargaining over the decision or its effects. The Complaint also alleged that the Company violated Section 8(a)(1) of the Act by threatening employees with discipline for failing to meet their cleaning quotas. Following a hearing, an ALJ found that the Company violated the Act as alleged.

On September 29, 2022, over a dissent, the Board agreed with the ALJ that the Company violated Sections 8(a)(1) and (5) of the Act "by changing the housekeepers' duties by requiring them to spend more time per room while still meeting the same room-cleaning quota without bargaining with the Union, and by failing to provide relevant information to the Union, requested on November 20, 2018." *Board Decision*, at *3. The Board reasoned that the "additional new bed-making tasks, combined with changing the numerous, heavier, and

longer new pillows and cleaning the renovated glass showers," caused housekeepers to "work harder and spend more time cleaning the renovated rooms." *Id.* at \*2. The Board majority also affirmed the ALJ's determination that the Company violated Section 8(a)(1) "by threatening housekeepers with discipline for failing to comply with an increased workload, implemented through unlawful unilateral changes." *Id.* at \*8. To remedy the violations, the Board ordered the Company to rescind the unlawful changes to the housekeepers' working conditions to the full degree practicable and compensate the housekeepers for any loss of earnings, including a decrease in bonuses from extra rooms cleaned. *Id.* at \*9-10. The Board then denied the Company's motion for reconsideration. On February 3, 2023, the Company petitioned this court for review of the Board's orders, challenging all of the Board's unfair labor practice findings and the remedy. On February 17, 2023, the Board filed a cross-application for enforcement.

## II. ANALYSIS

### A. Standard of Review

We review an NLRB decision "deferentially." *Windsor Redding Care Ctr., LLC v. NLRB*, 944 F.3d 294, 299 (D.C. Cir. 2019). "We must uphold the judgment of the Board unless, upon reviewing the record as a whole, we conclude that the Board's findings are not supported by substantial evidence, or that the Board acted arbitrarily or otherwise erred in applying established law to the facts of the case." *Wayneview Care Ctr. v. NLRB*, 664 F.3d 341, 348 (D.C. Cir. 2011) (quoting *Mohave Elec. Coop., Inc. v. NLRB*, 206 F.3d 1183, 1188 (D.C. Cir. 2000)). A Board finding is supported by substantial evidence so long as "a reasonable mind might accept a particular evidentiary record as adequate to support a conclusion."

*Dickinson v. Zurko*, 527 U.S. 150, 162 (1999) (quotations omitted). To set aside a Board's decision, we must find the record "so compelling that no reasonable factfinder could fail to find to the contrary." *Ozburn-Hessey Logistics, LLC v. NLRB*, 833 F.3d 210, 217 (D.C. Cir. 2016) (quoting *Bally's Park Place, Inc. v. NLRB*, 646 F.3d 929, 935 (D.C. Cir. 2011)).

## B. Information Requests

"There can be no question of the general obligation of an employer to provide information that is needed by the bargaining representative for the proper performance of its duties." *NLRB v. Acme Indus. Co.*, 385 U.S. 432, 435-36 (1967). Information "pertaining to wages, hours or conditions of employment" of employees in the bargaining unit "is presumptively relevant, and must be disclosed unless the employer proves a lack of relevance." *Oil, Chem. & Atomic Workers Loc. Union No. 6-418 v. NLRB*, 711 F.2d 348, 359 (D.C. Cir. 1983) (emphasis and quotation omitted). The Company does not dispute that "the requests at issue pertain directly to the housekeepers' daily work of cleaning the hotel's guest rooms and are therefore presumptively relevant." *Board Decision*, at *27. Rather, the Company contends that it "provided enough information to substantially comply with the information request." Br. of Petitioner 47 (quotation omitted). We disagree.

Substantial evidence supports the Board's determination that the Company failed to provide the Union with the requested information needed to meaningfully bargain. As the Board reasonably found, the Company failed to adequately answer the Union's queries regarding which rooms or floors would have glass-walled showers; the classifications of employees who would clean the glass doors; the appropriate tools to clean the glass doors; and what training, if any, would

be provided with respect to cleaning. *Board Decision*, at \*5. In response to the Union's information request, the Company vaguely answered that showers would be renovated "throughout both towers"; "[s]taff [would be] expected to clean the glass shower doors"; and "[v]arious cleaning products and tools" would be made available. J.A. 340. And the Company provided no response to the training inquiry. The Union had clearly expressed concerns to the Company that the glass shower doors could have "a material impact on the workload of housekeepers." J.A. 337. The record supports the Board's determination that the Company's failures to respond to the Union's queries fell short of providing the Union with information it needed to understand the new work arrangements contemplated by the Company so as to allow the Union to effectively bargain on behalf of unit employees.

### C. *Unilateral Change to Housekeepers' Duties*

Although parties to collective bargaining agreements may bargain over any legal subject, Congress has imposed on employers and unions a "mandate or duty to bargain [only on] matters of 'wages, hours, and other terms and conditions of employment.'" *First Nat'l Maint. Corp. v. NLRB*, 452 U.S. 666, 674 (1981) (quoting Section 8(d) of the Act, 29 U.S.C. § 158(d)). Before an employer changes a condition of employment, it must first "notify[] the Union of the proposed change, offer[] to bargain, and bargain[] with the Union in good faith concerning the change." *Teamsters Loc. Union No. 171 v. NLRB*, 863 F.2d 946, 954 (D.C. Cir. 1988). An employer may not "unilaterally chang[e] an existing term or condition of employment without first bargaining to impasse," *Regal Cinemas, Inc. v. NLRB*, 317 F.3d 300, 309 (D.C. Cir. 2003), for "a circumvention of the duty to negotiate . . . frustrates the objectives of § 8(a)(5) much as does a flat refusal," *NLRB. v. Katz*, 369 U.S. 736, 743 (1962). However, "not every minor

unilateral change in working conditions constitutes an unfair labor practice." *Microimage Display Div. of Xidex Corp. v. NLRB*, 924 F.2d 245, 253 (D.C. Cir. 1991). "[T]he change in working conditions must be material, substantial and significant," *id.* (quotation omitted), which the Board's General Counsel must establish, *N. Star Steel Co.*, 347 N.L.R.B. 1364, 1367 (2006).

Substantial evidence supports the Board's findings that, after permissibly deciding on its own to complete major renovations to its hotel, the Company then violated its duty to bargain by unilaterally increasing housekeepers' workload while retaining the same room-cleaning quota. *See Board Decision*, at \*4. The parties debate over whether this case concerns a *decision* by the Company to change housekeepers' workload by keeping the pre-renovations quota despite an increase in work required per room, or whether it concerns an *effect* of the permissible renovations that resulted in a higher workload when the housekeepers' room quota remained unchanged. According to the Company, this distinction matters because decision bargaining would require that the Company notify and bargain with the Union over any decision to materially change housekeepers' workload, whereas effects bargaining requires only that the Company notify the Union of the permissible renovations and bargain upon the Union's request over the effects. The Company also contends that effects-bargaining violations do not support the recission and make-whole remedy ordered by the Board. On the record before us, the Company is wrong on all counts.

As a preliminary matter, the Board contends that we do not have jurisdiction to entertain the Company's so-called effects-bargaining argument. We disagree. Section 10(e) of the Act limits this court's jurisdiction by providing that "[n]o objection that has not been urged before the Board . . . shall be considered

by the court" absent "extraordinary circumstances." 29 U.S.C. § 160(e). Here, the Company raised an effects-bargaining argument with the Board. The ALJ's analysis framed the housekeepers' increased workload as both a decision by the Company to "[u]nilateral[ly] [c]hange" housekeepers' duties, *Board Decision*, at *27, as well as an "impact[]" of the renovations, *id.* at *27 n.19. The Company's exceptions before the Board, in turn, argued that the Company did not fail to notify the Union of and allow bargaining over the "impact" of the renovations on the housekeepers' work. J.A. 381. The Board then assessed the case both as a decision by the Company to change housekeepers' duties, *see Board Decision*, at *4, and as an effect of the renovations on housekeepers' duties, *see id.* at *4-6. Since the Company viewed the case as one concerning only the impact of its renovations, and because the Board duly considered the effects-bargaining issue, we have jurisdiction to entertain the claim.

However, even though the Company has not forfeited its so-called effects-bargaining challenge, given the record in this case, the distinction between *decision* and *effect* is of no real consequence here. Even in an effects-bargaining case, an employer must still provide the Union with pre-implementation notice and an opportunity to bargain over any material changes to working conditions, *see 800 River Rd. Operating Co., LLC d/b/a Care One at New Milford*, 369 N.L.R.B. No. 109, at *9 & n.23 (Jun. 23, 2020), *enf'd.* 848 Fed. Appx. 443 (D.C. Cir. 2021), provided the employer could have reasonably foreseen the changes to the workload, *see 11 West 51 Realty LLC d/b/a The Jewel Facing Rockefeller Center*, 371 N.L.R.B. No. 83, at *3 (May 27, 2022), and provided the Union demands bargaining after receiving timely notice of the proposed changes, *see Berklee Coll. of Music*, 362 N.L.R.B. 1517, 1518 (2015).

14

Therefore, whether this case is framed as concerning a decision or an effect, the simple point is that the Company's major renovations resulted in changes in the housekeepers' terms and conditions of employment that were subject to collective bargaining. Ample evidence supports the Board's findings that the changes were material, substantial, and significant, as well as reasonably foreseeable. *See Board Decision*, at *1, *27 & n.18 (adopting ALJ's findings that cleaning glass-walled showers was more physically difficult and time-consuming, and that the extra pillows and the addition of sofa beds further added to the cleaning time); *id.* at *4 n.10 (finding that Company could have reasonably anticipated bargainable changes in workload resulting from the "substantial renovations"). Given the material changes in housekeepers' terms and conditions of employment, settled Board law mandates that the Company should have "notif[ied] the Union of the proposed change" and, should the Union wish to bargain, "bargain[] with the Union in good faith." *Teamsters Loc. Union No. 171*, 863 F.2d at 954. Yet, the Company did not do so.

As the Board found, and the record supports, the Company failed to give timely notice of the changes sufficient to allow for bargaining over the Company's decision to keep the pre-renovation quota despite the renovations' effects on workload. The Company did not notify the Union of the number of renovated showers until 10 months after the Union's request for this information, and almost two months after the Company had already completed renovations in one of the towers. *See Board Decision*, at *5. Yet, "the Union [had] made clear that it was concerned about the impact on employee workload and wanted more information from the [Company] in order to assess that impact." *Id.* As the Board reasonably explained, "[i]t is unreasonable to expect that the Union could have anticipated the impact on the housekeepers' workload without

knowing, at the very minimum, the number of rooms that were going to be renovated." *Id.* at *6. The record therefore supports the Board's determination that the Company failed to provide the Union with sufficient notice about the changes to the housekeepers' workload.

The Board also reasonably found that the Union did not waive its bargaining rights by waiting to respond to the Company's answers to its information requests. Because the Company did not timely notify the Union of the change in workload, the Union could not be expected to request bargaining. As the Board points out, not only did the Company largely refuse to provide the Union with requested information, but the Company also consistently represented that the renovations did not increase the workload. *Id.* at *6.

Given the record in this case, we have no reason to second-guess the Board's finding that the Company violated Sections 8(a)(1) and (5) of the Act. The Company had a duty to notify the Union of any proposed material change to the housekeepers' workload, as well as a duty to bargain over the proposed change should the Union request it. Instead, without bargaining or giving the Union a meaningful opportunity to request bargaining, the Company unilaterally required the housekeepers to perform more work under the same compensation scheme, in violation of the Company's duties under the Act. Because the Board permissibly found that the Company's refusal to bargain over the housekeepers' duties was unlawful regardless of whether this case involves decision or effects bargaining, we need not decide the question of which framing is more appropriate. *Cf. First Nat'l Maint. Corp.*, 452 U.S. at 676-77.

## D. *Threats of Discipline*

Section 8(a)(1) prohibits an employer from "mak[ing] statements with a 'reasonable tendency' to 'interfere with, restrain, or coerce' an employee's exercise of his statutory rights." *Fred Meyer Stores, Inc. v. NLRB*, 865 F.3d 630, 641 (D.C. Cir. 2017) (quoting *Tasty Baking Co. v. NLRB*, 254 F.3d 114, 124 (D.C. Cir. 2001); 29 U.S.C. § 158(a)(1)). Accordingly, an employer violates Section 8(a)(1) if the employer threatens an employee with discipline for not complying with an unlawful, unilaterally implemented change to his working conditions. *See, e.g.*, *Orchids Paper Prods. Co.*, 367 N.L.R.B. No. 33, at *2 (Nov. 20, 2018) (finding employer violated Section 8(a)(1) by "threatening an employee with discipline for not complying with the unilaterally implemented flame-resistant clothing policy"); *U.S. Postal Serv.*, 341 N.L.R.B. 684, 696 (2004) (affirming ALJ's finding that employer violated Section 8(a)(1) "[b]y threatening discipline for failure to comply with a unilaterally changed procedure"); *Advanced Installations, Inc.*, 257 N.L.R.B. 845, 850 (1981) (affirming ALJ's finding that employer violated Section 8(a)(1) by "threat[ing] to discharge employees who failed to observe the unilaterally imposed" payment changes), *enf'd.* 698 F.2d 1231 (9th Cir. 1982).

Substantial evidence supports the Board's determination that the Company violated Section 8(a)(1) of the Act by threatening housekeepers with discipline if they failed to meet the original quota after the Company unilaterally increased their work duties per room. The record reflects that the Union had expressed concerns to the Company about the difficulty of cleaning glass-walled showers, and the Union had asked to confer with the Company before any housekeeper began cleaning the new showers. The Company instead unilaterally decided to maintain the same quota. Once cleaning resumed in

the renovated rooms, several housekeepers then complained to the Company about unequal workloads resulting from the renovations. In response, the Company merely convened the housekeepers and told them "that failure to comply with the existing quotas would result in discipline, up to and including termination." *Board Decision*, at *8. In sum, the record supports the Board's finding that the Company's response to the housekeepers' complaints "can reasonably be interpreted by an employee as a threat." *PruittHealth-Virginia Park, LLC v. NLRB*, 888 F.3d 1285, 1295 (D.C. Cir. 2018) (quoting *Smithers Tire & Auto. Testing of Texas, Inc.*, 308 NLRB 72, 72 (1992)).

### E. Remedy

Finally, the Company's challenge to the Board's remedy is meritless. "[T]he Board's remedial authority is 'a broad discretionary one, subject to limited judicial review,' and a remedy 'will not be disturbed unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.'" *United Food & Com. Workers Union Loc. 204 v. NLRB*, 447 F.3d 821, 827 (D.C. Cir. 2006) (quoting *Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 216 (1964)). In this case, the Board found recission of the unlawful changes to housekeepers' duties to the full degree practicable and make-whole relief for lost bonuses appropriate, on the grounds that the Company's bargaining violation adversely affected the housekeepers' earnings. *See Board Decision*, at *7. The remedy ordered clearly was within the Board's discretion.

The Company has not cited any authority to support the proposition that cases concerning so-called effects-bargaining violations mandate a uniform remedy, such as the one the Company cites from *Transmarine Navigation Corp.*, 170

N.L.R.B. 389 (1968). *See* Br. of Petitioner 33. Indeed, the Board decision in *Transmarine* makes it clear that, "[i]n fashioning an appropriate remedy, . . . the remedy should 'be adapted to the situation [which] calls for redress.'" *Transmarine*, 170 N.L.R.B. at 389 (quoting *NLRB v. Mackay Radio & Tel. Co.*, 304 U.S. 333, 348 (1938)). And there is no doubt that, over the years, the Board has ordered rescission and/or make-whole relief for effects-bargaining violations when appropriate. *See, e.g.*, *McClatchy Newspapers, Inc. d/b/a The Fresno Bee*, 339 N.L.R.B. 1214, 1216 (2003) (ordering rescission and make-whole relief and explicitly declining to rely on the *Transmarine* remedy); *KIRO, Inc.*, 317 N.L.R.B. 1325, 1329 (1995) (ordering make-whole relief); *Natomi Hospitals of California, Inc. d/b/a Good Samaritan Hospital*, 335 N.L.R.B. 901, 904 (2001) (ordering rescission). In sum, the Board here acted within its remedial discretion when it ordered recission and make-whole relief to address the Company's unfair labor practices.

## III. CONCLUSION

For the reasons set forth above, we deny the Company's petition for review and grant the Board's cross-application for enforcement of its order.

*So ordered.*